UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA MADSEN, | ) | CASE NO. 5:13-CV-2519 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | ORDER AND OPINION |
| AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, AFL-CIO/CLC, LOCAL 24 | ) ) ) ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on plaintiff Linda Madsen's motion to remand to the Summit County Court of Common Pleas (Doc. No. 8). Defendant has filed a response (Doc. No. 9), and plaintiff has filed a reply (Doc. No. 15[1]). Also pending is plaintiff's motion to strike (Doc. No. 11) the affidavit and exhibits submitted by defendant in support of its opposition to the motion to remand (Doc. No. 10). For the reasons set forth below, plaintiff's motion to remand is GRANTED. Plaintiff's motion to strike is DENIED.[2]

I. Factual Background

Plaintiff Linda Madsen ("Madsen" or "plaintiff") served as the elected Secretary-Treasurer of Local No. 24 ("the Local" or "defendant") of the American Federation of Musicians

---
[1] Plaintiff initially filed a reply (Doc. No. 12), and then filed two errata correcting errors in the initial reply brief (Doc. Nos. 13, 14), before filing the amended and restated reply brief currently before the Court (Doc. No. 15). Counsel for plaintiff has submitted these "rolling" briefs in another case before the Court and is hereby cautioned that he must submit one brief, in conformity with the Local Rules, without subsequent updates and corrections, unless warranted by extraordinary circumstances.
[2] In her reply in support of the motion to strike, plaintiff essentially abandons the motion, conceding that the affidavit and exhibits submitted by defendant "probably can remain a part of the record[.]" (Doc. No. 19 at 251.) The Court agrees that the affidavit and exhibits do not add any grounds for removal not stated in the original notice but merely expound upon them. The motion to strike is therefore DENIED.

of the United States and Canada ("the International"). (Doc. No. 2 at 11.) At this early stage in the proceedings, Madsen's date of election as Secretary-Treasurer is unknown; however, record evidence shows that she served in this capacity as far back as October 26, 1999. (*Id*. at 19.) Madsen vacated the office on February 7, 2011. (*Id*. at 11.)

Madsen claims that the bylaws and standing resolutions of the Local set her salary at $27,469.92 annually, with vacation, holiday and sick leave benefits, as well as contributions to the Local's pension plan. (*Id*. at 12.) Per a resolution adopted by the Local's executive board, Madsen earned sixteen vacation days each year, which could "be taken or carried forward at the discretion of the [Secretary-Treasurer]. Unused Vacation Days shall be paid, at a time chosen by the [Secretary-Treasurer], based pro rata per work day on the salary of the [Secretary-Treasurer] at the time of payment." (*Id*. at 21.) An April 6, 2006 audit of fiscal year 2005 determined that Madsen had accumulated $7,660.06 in vacation days neither taken by Madsen nor paid by the Local. (*Id*. at 24.) The Local accepted this audit on June 4, 2006. (*Id*. at 22.)

When Madsen vacated the Secretary-Treasurer position, she alleges that the Local owed her $13,734.96 in unpaid salary and $5,018.66 in accrued but unpaid vacation days. (*Id*. at 13.) She sued the Local in the Summit County Court of Common Pleas, seeking $18,753.62, plus interest, liquidated damages, and attorneys' fees. (*Id*. at 17.) She asserts five claims against the Local: (1) breach of contract in writing, (2) breach of implied contract, (3) promissory estoppel, (4) unjust enrichment, and (5) failure to remit wages in violation of Ohio Rev. Code § 4113.15. The Local removed the case to this Court, claiming that Madsen's claims are preempted by § 301 of the Labor Management Relations Act (LMRA) because they involve interpretation of labor contracts—the International's constitution and the Local's bylaws. Madsen seeks remand to the Summit County Court of Common Pleas, asserting that the LMRA does not apply to the

2

contracts in dispute because her claims arise out of the Local's bylaws and standing resolutions.

## II. Standard of Review

A defendant may remove to federal court only state court actions that originally could have been filed in federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). As a court of limited jurisdiction, a federal district court must proceed cautiously in determining that it has subject matter jurisdiction. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1252 (6th Cir. 1996). The court must give "due regard" to the power reserved to the states under the United States Constitution to provide for the determination of controversies in the state courts. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941). Accordingly, removal statutes must be construed strictly to promote comity and preserve jurisdictional boundaries between state and federal courts. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). "[A]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). The defendant seeking removal bears the burden of proving the court's jurisdiction. *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000).

## III. Law and Analysis

### A. Federal Question Jurisdiction

The parties agree that diversity is incomplete, and therefore cannot provide a basis for federal jurisdiction. The Court has jurisdiction over this case, if at all, if it presents a federal question, i.e., if it "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The well-pleaded complaint rule governs federal question cases, extending jurisdiction "over only those cases in which a well-pleaded complaint establishes either that

federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well pleaded . . . claims[.]" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988) (internal citation and quotation marks omitted).

The plaintiff is the master of her claim, and may avoid federal jurisdiction by relying exclusively on state law. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003) (citing *Caterpillar*, 482 U.S. at 392). "In particular, the existence of a federal defense normally does not create statutory 'arising under' jurisdiction, and a defendant may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the cases arises under federal law[.]" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) (internal citations and quotation marks omitted) (alteration and emphasis in original); *see also Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, Local 704*, 25 F.3d 1308, 1313 (6th Cir. 1994) (defensive assertion of federal labor statute "does not raise a federal question for removal purposes").

B. The Preemption Exception

Notwithstanding a plaintiff's well-pleaded state law complaint, a defendant may remove a case to federal court "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial*, 539 U.S. at 8. "When the federal statute completely pre-empts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id*. In areas of complete preemption, the court must "look beyond the face of plaintiff's allegations and

4

the labels used to describe her claims and . . . evaluate the *substance* of plaintiff's claims." *Paul v. Kaiser Found. Plan of Ohio*, 701 F.3d 514, 519 (6th Cir. 2012) (emphasis in original). Yet, "'complete preemption'—no matter how powerful when properly present in a case—is of very limited application: it is a very limited exception to the well-pleaded complaint rule." *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 553 (6th Cir. 2005). It applies only when plaintiff "has *chosen* to plead what . . . must be regarded as a federal claim," though it masquerades as a state claim. *Caterpillar*, 482 U.S. at 399.

### C.  § 301 of the Labor Management Relations Act

Section 301 of the LMRA, codified at 29 U.S.C. § 185, governs claims involving federal labor law and "both preempts certain state-law contract claims and also confers federal jurisdiction over those claims[.]" *Paul*, 701 F.3d at 519 (quoting *Kitzmann v. Local 619-M Graphic Commc'ns Conference of Int'l Bhd. of Teamsters*, 415 F. App'x 714, 717 (6th Cir. 2011)). First, § 301 confers federal jurisdiction and establishes venue over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations[.]" 29 U.S.C. § 185(a). Second, its powerful preemptive force "displace[s] entirely any state cause of action for violation of contracts between an employer and a labor organization[,]" or between such labor organizations, even if "state law would provide a cause of action in [its] absence[.]" *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983). Displacing state law results in federal uniformity, allowing parties to labor contracts to formulate contract provisions certain that the same terms in every labor contract shall carry the same meaning. *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962).

To determine whether § 301 preempts Madsen's state law claims, the Court must first decide which, if any, of the parties' contracts invoke the Court's jurisdiction. In short, does this case involve "contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations," such that § 301 applies? If so, the Court must then decide whether plaintiff's particular claims are preempted by § 301.

D. Contracts under § 301

The parties agree that no "contracts between an employer and a labor organization" are relevant to this dispute. Instead, defendant identifies two contracts between labor organizations: the International's constitution and the Local's bylaws. Plaintiff agrees that the International's constitution is a contract between labor organizations, correctly contends that the Local's bylaws do not constitute a § 301 contract, and as explained *infra*, correctly argues that she did not state any claim arising from or involving interpretation of the International's constitution.

The Supreme Court has held that union constitutions are contracts between labor organizations, specifically, the parent and the local unions. *See United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Local 334, United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 452 U.S. 615, 621, 101 S. Ct. 2546, 69 L. Ed. 2d 280 (1981). When a local union accuses a parent union of violating the union constitution, § 301 governs. Not limited to union-on-union disputes, § 301 also applies to lawsuits between individual union members and labor organizations, if the allegations include a violation of the union constitution or other contract between labor organizations. *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 101, 112 S. Ct.

6

494, 116 L. Ed. 2d 419 (1991). Section 301 focuses on the character of the contract, not the parties to the lawsuit.

Section 301 does not govern lawsuits involving individual employment contracts, even when the employees are also parties to collective bargaining agreements. *See Caterpillar*, 482 U.S. at 394-95. If the plaintiff chooses not to vindicate her rights under a labor contract, instead bringing claims based on an individual contract, the plaintiff's complaint controls. In a case between a local and its employee, the Sixth Circuit found that "[p]laintiff's allegation of an employment contract providing for just cause termination does not constitute a collective bargaining agreement. . . . An employment contract between an individual and a labor organization does not fall within the jurisdiction of § 301." *Kunz v. United Food & Commercial Workers, Local 876*, 5 F.3d 1006, 1009 (6th Cir. 1993) (citing *Wooddell*, 502 U.S. at 98); *see also Pearson v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 99 F. App'x 46, 52 (6th Cir. 2004) (if contract were signed only by employee and union, "it would not be a contract between an employer and a labor organization representing employees, nor would it be a contract between labor organizations"); *Chicago Reg'l Council of Carpenters v. Losinske*, No. 06 C 6903, 2007 WL 1576129, at *3 (N.D. Ill. May 29, 2007) (same).

Also strictly construing the limits of § 301, the Seventh Circuit held that "[t]he constitution of a local union . . . is a contract between the union and its members," and "[a] suit on a contract between a labor organization and a member is not within the scope of section 301." *Korzen v. Local Union 705, Int'l Bhd. of Teamsters*, 75 F.3d 285, 288 (7th Cir. 1996) (citation omitted); *see also Bermingham v. Castro*, 191 F.3d 459, at *1 (9th Cir. 1999) (unpublished table decision) (same). Similarly, after noting that § 301 "did nothing to extend [preemption] to contracts that do not involve an employer-union or union-union[,]" a district court concluded that

7

"[l]ocal bylaws are not contracts between labor organizations" and do not confer federal jurisdiction. *Williams v. Local Union 911, United Steelworkers of Am.*, 31 F. Supp. 2d 40, 43-44 (D.R.I. 1998); *see also Dashields v. Robertson*, 215 F.3d 1318, at *2 n.2 (4th Cir. 2000) (unpublished table decision) (suit predicated on bylaws does not fall within preemptive scope of § 301).

Even *Kitzmann v. Local 619-M Graphic Commc'ns Conference of the Int'l Bhd. of Teamsters*, 415 F. App'x 714 (6th Cir. 2011), the lead case cited by defendant to support its assertion that the Local's bylaws constitute a contract between labor organizations, betrays it. (*See* Doc. No. 9 at 103.) In *Kitzmann*, plaintiff alleged that the Local violated several contracts, among them, the international union constitution; the constitution of District Council 3, an organization composed of several local unions; an affiliation agreement between unions; and the Local's own constitution. 415 F. App'x at 718-19.  Concluding that the "[i]nternational constitution, the District Council 3 constitution and the affiliation agreement are all 'contracts between labor organizations,'" the Sixth Circuit affirmed § 301 preemption. *Id*. at 719. Importantly, the court noted that plaintiff's other allegations, including violations of the Local's constitution "fell within the district court's supplemental jurisdiction, even if they were not preempted." *Id*. at 720 (citing 28 U.S.C. § 1367(a)).[3]

---

[3] Nor do the other cases cited by defendant support its position that local bylaws are § 301 contracts. In *Wall v. Constr. & Gen. Laborers' Union, Local 230*, 224 F.3d 168 (2d Cir. 2000), the court stated that plaintiffs' state law claims were preempted because of "Local 230's constitution." *Id*. at 178. The Court has reviewed the case and has determined that the constitution referenced by the court is the international union's constitution. *See id.* at 175 ("Local 230 is affiliated with LIUNA [the international union], and, as such, is governed by LIUNA's Uniform Local Union Constitution[.]"). In the other cases cited by defendant, as well as cases the Court has located in its research, plaintiffs asserted violations of the bylaws *and* union constitutions. *See DeSantiago v. Laborers Int'l Union of N. Am., Local No. 1140*, 914 F.2d 125, 128 (8th Cir. 1990) (claims were based upon "the local and international constitutions"); *Pruitt v. Carpenters' Local Union No. 225 of United Bhd. of Carpenters & Joiners of Am.*, 893 F.2d 1216, 1219 (11th Cir. 1990) (same). These cases merely show the role of supplemental jurisdiction in labor law cases: it allows adjudication of claims arising from non-§ 301 contracts. To the extent that these and other cases hold instead that bylaws are contracts between labor organizations, the Court declines to follow them. In

Here, defendant has provided two contracts. Of these, the International's constitution indisputably constitutes a contract between labor organizations, while the Local's bylaws, governing the relationship between the Local and its members, do not. Further, the Local's "standing resolutions," from which Madsen lays claim to salary, vacation compensation, and pension contributions (Doc. No. 2 at 12), are not contracts between labor organizations. They are contracts between Madsen, an employee, and the Local, an employer. *See Kunz*, 5 F.3d at 1009; *Pearson*, 99 F. App'x at 52. Through supplemental jurisdiction, Madsen's claims for breach of the bylaws or standing resolutions could piggyback on the Court's jurisdiction over the International's constitution; however Madsen's complaint must first invoke the Court's jurisdiction over the International's constitution. The Court turns now to this inquiry.

E. Claims Subject to § 301 Preemption

Having determined that this litigation involves a contract between labor organizations—the International's constitution—the Court must now determine whether plaintiff's state law claims are preempted because of it. "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985). When, however, the terms of labor contracts, the driving force behind § 301, are implicated, so, too, is federal exclusivity. The Sixth Circuit has developed a two-step approach to § 301 preemption: "First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining

---

*United Association of Journeymen* and *Wooddell*, the Supreme Court addressed § 301 only with respect to union constitutions and has not extended § 301's reach beyond them. 452 U.S. at 627 ("We do not need to say that every contract imaginable between labor organizations is within § 301(a). It is enough to hold . . . that union constitutions are.); 502 U.S. at 101 ("union constitutions are an important form of contract between labor organizations").

agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (internal citation omitted). If the right claimed does not involve labor contract interpretation and is borne of state law, "there is no preemption." *Id.*

Before it engages in the two-step analysis, the Court notes that plaintiff's sole reference to the International's constitution in her complaint notes that the Local "is organized and conducts its business under . . . the continent-wide international union, the American Federation of Musicians of the United States and Canada." (Doc. No. 2 at 12.) Thereafter, she refers only to the Local's bylaws and standing resolutions. In its notice of removal, defendant alleges that plaintiff's claims arise from the International's constitution, specifically, the provision that "Each Local shall pay a wage or honorarium to its chief executive Officer and chief administrative Officer." (Doc. No. 1-1 at 6.) While never stating explicitly that plaintiff was the chief executive Officer or chief administrative Officer, defendant states that plaintiff's claims arise, in part, from this provision. Plaintiff denies that she served as the Local's chief administrative Officer. For purposes of its two-step analysis, the Court assumes that plaintiff was the chief administrative Officer and this provision fully applies to her. Even if plaintiff did serve as the Local's chief administrative Officer, however, her claims are not preempted by § 301.

a. Claims involving interpretation of § 301 contracts are preempted.

Section 301 preempts state law claims if the state claims "require[] the interpretation of a collective-bargaining agreement[,]" or other § 301 contract. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988); *see also Diamond v. United Food & Commercial Workers Union, Local 881*, No. 97 C 6216, 1997 WL 667823 (N.D. Ill. Oct. 24, 1997) (preemption when state law claim required

interpreting bylaw language identical to language in international union constitution).

For example, the Sixth Circuit affirmed preemption when plaintiff asserted a state law claim of intentional infliction of emotion distress, claiming that the union's treatment of him "undermine[d] the due process requirements contained in the [union] constitution[,]" constituting outrageous conduct. *Pearson*, 99 F. App'x at 53 (quotation marks omitted) (first alteration in original). To assess plaintiff's claim, the court would necessarily construe the due process requirements of the union constitution, a § 301 contract. Similarly, state claims that involved calculating the timeliness of dues payments under the union's constitution and bylaws were preempted. *See Fox v. Bakery, Confectionary, Tobacco Workers & Grain Millers Int'l Union, Local No. 24, AFL-CIO*, No. C 08-05737 WHA, 2010 WL 682458, at *9 (N.D. Cal. Feb. 24, 2010). If, however, in anticipating subsequent proceedings, defendant cannot credibly point to any provision or language of a labor contract that the Court would be required to interpret, then the first step does not demand preemption. *See Hahn v. Rauch*, 602 F. Supp. 2d 895, 906-07 (N.D. Ohio 2008); *see also Pearson*, 99 F. App'x at 53 (elements of fraud and intentional misrepresentation claims did not require analysis of labor contract).

  b. Claims arising out of rights created by § 301 contracts are preempted.

Preemption under the second step is appropriate when "'the rights claimed by the plaintiff were created by the [labor contract.]'" *Kitzmann*, 415 F. App'x at 718 (quoting *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004)). If the state law claim does not exist independently of the labor contract, the state law claim is preempted by the labor contract. *See Allis-Chalmers Corp.*, 471 U.S. at 213. Claims dependent on labor contracts include both state contract and tort claims. *Mattis*, 355 F.3d at 905 (citations omitted). For example, if a labor contract creates a business relationship between two parties, a state claim for tortious interference with a business

relationship does not exist independently of the labor contract. *See id*. at 907 (citing *DeCoe*, 32 F.3d at 218); *see also Rauscher v. Ryan*, No. CIV.A. 93-5950, 1994 WL 121006, at *6 (E.D. Pa. Apr. 7, 1994) ("[T]he plaintiffs claim that the defendants intentionally interfered with their contractual rights . . . derive[d] from the union constitution."); *Ramos v. Dist. Council 16, Int'l Union of Painters & Allied Trades*, No. C 13-03025 WHA, 2013 WL 5442291, at *3 (N.D. Cal. Sept. 30, 2013) (unfair business practices and negligence claims arose out of union's constitution and bylaws). State contract claims dependent on rights created by § 301 contracts are easy to spot—generally they are, or include, breach of contract claims. *See Kitzmann*, 415 F. App'x at 719 ("Kitzmann has alleged that the Defendants breached these § 301 contracts.")

If, however, plaintiff avoids asserting claims arising from her labor contract or other federal law and "does not even hint at the need to resolve any dispute concerning interpretation of [labor contract] terms[,]" then plaintiff's well-pleaded complaint avoids federal preemption. *Paul*, 701 F.3d at 522 (no preemption of state law disability claim). Claims arising from plaintiff's individual employment contract with her employer, for example, are not preempted. *Caterpillar*, 482 U.S. at 394-95 ("It is true that respondents, bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so.") State civil rights claims also exist independently of labor contracts—plaintiff does not need a labor contract to be free from discrimination. If plaintiff confines her complaint to state discrimination claims, the complaint controls. *See Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1332 (6th Cir. 1989) (en banc); *Tisdale*, 25 F.3d at 1314 ("state right not to be discriminated against by a labor organization" not preempted); *see also Karnes v. Boeing Co.*, 335 F.3d 1189, 1193 (10th Cir. 2003) (no preemption of union member's complaint alleging violation of state

statute requiring companies' anti-drug policies to be applied uniformly); *Austin v. Int'l Bhd. of Elec. Workers, AFL-CIO*, No. 4:11-CV-1029 CEJ, 2012 WL 685416, at *3 (E.D. Mo. Mar. 2, 2012) (no preemption of claims for violation of "non-waivable rights created under Missouri law").

The Court now turns to plaintiff's specific claims.

F. Analysis

The Court must determine if any of plaintiff's claims—breach of written and implied contract, promissory estoppel, unjust enrichment, and failure to remit wages—arise from rights created by the International's constitution or involve interpretation of the International's constitution, the sole § 301 contract in this case. As stated above, for purposes of determining this motion, the Court assumes that the International constitution's provision regarding chief administrative officers applies to plaintiff. Even making this assumption, the Court concludes that plaintiff's claims simply do not arise from the International's constitution. She does not allege any violation of, and only mentions in passing, the International's constitution, instead stating that her claims arise "[u]nder the bylaws and standing resolutions of the [Local.]" (Doc. No. 2 at 12.) Looking behind the face of the complaint to its substance, the rights claimed by plaintiff—her specific salary, her vacation pay, and her pension contributions—all arose from the Local's standing resolutions, not the International's constitution. The Local's standing resolutions are not § 301 contracts; instead, they are actions taken by the Local that govern its relationship with Madsen, an individual. Quite simply, the International's constitution did not establish the specifics regarding her rights to her vacation pay or pension contributions; the standing resolutions did. While the International's constitution required a wage for the "chief administrative Officer," the right claimed by plaintiff is her right to the amount of salary set by

the standing resolutions and bylaws. Additionally, Ohio Rev. Code § 4113.15 gives rise to Madsen's fifth claim. Plaintiff's choice to assert her failure to remit wages claim on the basis of state statutory law and individual employment contracts, rather than the line cited in the International's constitution, should be respected. *See Caterpillar*, 482 U.S. at 394-95.

Nor do any of Madsen's five claims necessitate interpreting the International's constitution. The International's constitution states that Madsen is entitled to a wage. Defendant points to no ambiguity in the International's constitution, no term in need of construction or explanation, and nothing that would imperil the uniformity of labor contract interpretation. *See Rauch*, 602 F. Supp. 2d at 907 ("Defendants do not cite any specific portion of the Local's constitution or explain what type of interpretation might be required.") On the other hand, the bylaws and standing resolutions, according to plaintiff's complaint, set the amount of wages and all the other benefits plaintiff seeks. Plaintiff claims a breach of those agreements, reliance on those agreements, unjust enrichment resulting from those agreements, and failure to remit the wages set by those agreements. Those non-§ 301 provisions, not the International's constitution, shall require interpretation.

Because this case's sole § 301 contract neither requires interpretation nor gives rise to any claim plaintiff chose to plead, preemption, powerful as it otherwise can be, is inappropriate in this case.

**IV.     Conclusion**

For the reasons set forth above, plaintiff's motion to remand is GRANTED. Plaintiff's motion to strike is DENIED. This case is remanded to the Summit County Court of Common Pleas.

**IT IS SO ORDERED**.

Dated: April 1, 2014

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**